We will begin with oral argument from Mr. Morell on behalf of the appellants. Thank you, Your Honor, and may it please the Court. My name is Benjamin Morell. I represent the petitioner appellant, Ryan McMullen. Under the clearly established law of Strickland v. Washington, a lawyer's decision about how to defend his client at sentencing must be supported by either a thorough investigation or a reasonable professional judgment supporting a limitation on that investigation. Here at sentencing, Mr. McMullen's lawyer did not fulfill his obligation to thoroughly investigate his client's background. Had he done so, he would have discovered evidence of Mr. McMullen's significant childhood history of physical abuse, mental health issues, and witnessing horrific domestic violence. So, Mr. Morell, I'm sure you're waiting for this question, but what remains for this Court to be done in light of the Indiana State Court's decision to grant probation, basically, to get him out of prison, put him on probation after serving approximately 10 years? Is there anything left that we can do, and would Mr. McMullen actually be better off or worse off if we were to set aside all of these state proceedings? Well, Your Honor, that strategic judgment is outside the scope of the mootness review here. The question for this Court is whether Mr. McMullen's appeal is moot because his sentence has either been extinguished or has been changed, and neither of those things are true. What the state court's order shows is that the sentence has been suspended but not reduced in any way, and the conditions of probation make clear that that sentence could be reinstated in full if Mr. McMullen violates his probation and if he's sent back to prison. The hypothetical beginning of our reply brief sort of bears this out, and this distinguishes this case from those cited in the respondent's brief, in which the chain of events that it would take for the challenge sentence to once again affect the petitioner is very attenuated in those cases. For example, in Watkins, he was released from prison, and eight or nine different things would happen in a future case. The Court found that that wasn't enough to have a concrete interest. Here, there is a concrete interest, which is the exact same sentence that's challenged here could still spring to life and be imposed on Mr. McMullen, and he could do this 50-year sentence. Mr. Morell, on this question of the sentence modification that occurred after the time in prison, same cause number, same length, however, conversion to probation, I don't think the record has the transcript of the sentence modification hearing. It was the same judge, though, Judge Spitzer, throughout, correct? That's correct, Your Honor. Do we know whether or not the reasoning that's been offered for purposes of the conversion from prison to probation was based in the same arguments that you say his sentencing lawyer did not make, or whether it was his adjustment to prison, or a combination of those two? Well, Your Honor, the transcript's not in the record, and it wasn't available below, so we don't know exactly what happened. There's some evidence that we have. First of all— Does that mean you don't have it either? That's correct, Your Honor. We don't have it. So first of all, the modification order says just that evidence and argument took place, and some evidence of the difference in scope here, we can find this in the trial court's order on post-conviction review. That same order also disposed in Mr. McMullen's original motion to modify his sentence. At the very end of that order, it takes a different frame of reference, whereas the post-conviction review part of the decision is about the background, the mental health issues, and lots of the other IAC claims that are not at issue here. What the end of that order says is on modification, what we're going to look at is Mr. McMullen's conduct in prison, what he's done ever since, what he's done in jail. So it seems to me that the scope, and at least the focus, is different when it comes to sentence modification than when it comes to the original sentencing background that's at issue in this appeal. So your answer to my question would be the second of the three? Second of the—I'm sorry, Your Honor. Of the three options. It would be based on his adjustment within prison and going forward. That seems to be the case, Your Honor, but since we don't have the transcript, we don't fully know. Yeah, it's a pretty—look, we need to move on, but it's a pretty—I don't know about surprising, but unexpected development, right? I mean, when you read the state sentencing transcripts and what's going on in the Indiana state courts, I mean, it's a pretty—it's a tough sentence. I mean, it is a statutory maximum sentence. There's not that much time go by, and now he's out on—I mean, and he's out on probation. Yes, Your Honor. I mean, I don't see that every day. And, Your Honor, I think that speaks to why the sentence in the first place was inappropriate, because had the trial court had all of this mitigating evidence, had his lawyer performed competently at sentencing, that wouldn't have happened in the first place, and the sentence that was imposed originally would have better reflected the character and the mental health of what Mr. McMullen is. No, I understand that argument, but I need to go back to one other point about the suspension. I recognize that's a little different from what's happened in some other cases, but the argument that I'd like you to address is the one based on Spencer against Chemna and these other cases. He is, at the moment, on probation. Presumably, as long as he behaves himself and complies with the conditions of probation, he will remain outside of prison and serve out the rest of whatever time there is. And isn't that what Spencer says? He says, look, we can't approach this as though we're assuming you're going to violate the conditions of probation. You hold compliance in your own hands. Well, Your Honor, Spencer is more attenuated in that the court there, but basically, the focus was on whether the interest was concrete and what other things would have to happen for that sentence to spring back to life. Here, it's clear and it's more direct, because the original sentence here is still in place. It's just suspension. No, I get it, but he's not going to be put back in prison just because somebody's in a bad mood someday. There would have to be some allegation that he had violated the terms of his probation, wouldn't there? There would, Your Honor, and the court would have to make that determination. And so that's why I see the Spencer connection. Yes, Your Honor, and I just point to the Supreme Court's decisions in Gomez and in Chaffin, emphasizing that, first of all, respondents have the burden when it comes to moving this, and second of all, as long as there's a concrete interest, however small, in the outcome of the litigation, we still have standing. Now, if I could move to the prejudice issue, Your Honor. The Indiana Court of Appeals reweighing of the evidence is the key decision at issue here. The Supreme Court's case is made clear that that's what a court needs to do when it comes to a prejudice inquiry under Strickland at sentencing. They have to reweigh the evidence, including the new evidence that was submitted on post-conviction review or evidence hearing or wherever, and reweigh that evidence as far as aggravation goes. And the state court made four different errors that make its application of Strickland unreasonable here, and that's discussed in our brief. But first of all, the first one is the nexus requirement, and that's clearly contrary to Supreme Court law. The Supreme Court's decisions have held for many years that you cannot dismiss mitigating evidence simply because there's no direct connection between that evidence and the crimes of conviction. The trial court's order did that exact same nexus requirement. The Indiana Court of Appeals order also imposed a nexus requirement, and responses in their brief continue to argue that a nexus requirement should be in place. All of that is contrary to Supreme Court law, and the way that that fits in here is that it led to an unreasonable application of Strickland when the court unreasonably dismissed that mitigating evidence. And beyond that, that evidence that the court dismissed actually is connected with the nexus in that Mr. McMullin, his whole childhood, he grew up with drug-addicted parents. Dealing of cocaine happened all throughout his childhood. Police raids, all of this happened. He eventually started dealing drugs because his mother's abusive boyfriend coerced him to. He wanted to do that so he could get money for his family to break their tendency. Mr. McMullin had a horrible life. We can see that. But he also has a pretty serious criminal record, maybe resulting from that. That's right, Your Honor. The court had all of that aggravating evidence available to it. I think there's a difference between, for example, in a lot of the Supreme Court's cases dealing with death in that bringing in some mitigating evidence might be seen as introducing the sharp double-edged and come with a lot of other aggravating circumstances in criminal history. But the trial court here already had all the aggravating evidence. What it didn't have was any mitigating evidence from Mr. McMullin's counsel to explain, to humanize him, and to show that all of this juvenile stuff that he got involved into as a kid, grew up dealing drugs as a kid, that happened because of, at least in some way, his underprivileged childhood, his abuse, and his mental health disorders that he didn't receive any treatment from that was effective. So of what relevance is it that at the state post-conviction level, Judge Spitzer actually hears this awful story and yet doesn't do anything? Well, Your Honor, the trial court made the same error as the Indiana Court of Appeals here, which is it didn't fairly consider and state what that evidence was. Now the trial court's order on post-conviction says that all of this mitigating evidence basically amounts to nothing more than family and friends saying that they like the criminal defendant and saying that this is where I think this person went on the wrong path. That ignores the most important evidence introduced at post-conviction review, which is, first of all, the very specific evidence of childhood abuse, and second of all, even more importantly, the mental health issues. Now Indiana law now statutorily requires courts to evaluate whether post-traumatic stress disorder is present in a criminal defendant before imposing a sentence. Now Mr. McMullin's sentence happened before the General Assembly made that change, but as we cite the Indiana State Courts in our brief, the court was still involved in looking at post-traumatic stress disorder, and in that case it found as mitigating circumstances and reduced a sentence on appeal. And so that mental health evidence was not in the record. It was not in the pre-sentence report. There was only a very brief mention of Mr. McMullin having some concerns about depression in the PSR. Now for the deficient performance problem, that should have spurred Lewis to investigate further, but the trial court didn't acknowledge that evidence at all, neither did the Indiana Court of Appeals. Mr. Morrell, I want to ask you about the overlay of 2254D here and get the benefit of your responding to that because there's a lot of deference owed there, as you know, and when you look at the rationale that has been given at the original sentencing and on through the post-conviction relief, there's an enormous emphasis on criminal history and his pattern of offense conduct escalating, et cetera, et cetera. How, in your view, can your client overcome the deference that's owed to the state on that? Well, in several ways, Your Honor, and the first thing is to note that this was a statutory maximum sentence. So in the prejudice inquiry, all we have to show is that, ignoring the Edpa deference part for just a second, that he would have received a reasonable probability he would have received any sentence below the statutory maximum. So he was always going to get a high sentence. I think even Mr. Lewis argued for 35 years. So we're already at the high end here, but we're at the very statutory maximum, and so the reason why the Indiana Court of Appeals' decision supporting saying there's no reasonable probability that would have changed is wrong, and not only wrong but objectively unreasonable, is because of all of these errors it made. Now, if this were simply just a weighing the evidence case, we'd have a much harder time, but instead what happened is the Indiana Court of Appeals, first of all, mischaracterized the nature and sources of the evidence, as I discussed. Second of all, it misstated the evidence by saying that this was in the PSR when it wasn't. Third, it imposed this nexus requirement, which I have discussed, and fourth, it relied on two previous decisions. First of all, the direct review decision, which didn't have the benefit of any of this evidence, and second of all, the trial court's order, which didn't fairly meet. Now, if there are no further questions, I'd like to reserve my remaining time. That's fine. Thank you. Thank you. Mr. Drum. May I please the court? This sentencing appeal is moot because McMullen has been resentenced. The modification was a new sentence and an intervening judgment because McMullen is no longer serving the sentence that he alleges is unconstitutional. What's the difference between a new sentence and a suspended sentence and all these other kinds of sentences that we've been talking about? Under the modification statute, there is no difference, Your Honor. Either a reduction or a suspension is a suspended sentence, and I think that's the problem with McMullen's argument is that he doesn't acknowledge the plain language of the statute. If I could quote it. Oh, okay. Go ahead and do that. Sure. The statute says the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose. So it uses the word reduce and suspend in the alternative. Correct. But a reduction or a suspension is a new sentence. The key conjunction there is and. Reduce or suspend and impose. Is there a new judgment entered? Yes. Isn't it the same abstract of judgment on the same cause number? It is the same abstract, Your Honor, but the new judgment is the modification order, which actually I believe this court has on its docket at 16-3. So take the hypothetical that is offered on the other side. Make any iteration of what you want. Suppose that tomorrow there's a quite violent crime committed or something that would warrant no longer being unreleased but would warrant reincarceration. You'd say, yeah, that's completely lawful. He's going to be reincarcerated. And he's reincarcerated, correct? And at that point in time, he would be serving a custodial sentence. Correct. Right. He's not on release. He's in and he's serving a sentence. He'd be serving a sentence for the same offense conduct, right? It's a cocaine conviction, right? Dealing cocaine. Dealing cocaine. Okay. And what would its term of years be? It would be the remainder of time that he has left. Okay. But what would the starting point be, 50 minus? Yes. Okay. So that's what makes me look at this and think it's the same sentence that he has an interest in it being vacated on the basis of the Sixth Amendment violation that he alleges. But it's effectively the same sentence. I agree that nominally it is the same sentence. It's a 50-year sentence. For the same offense conduct? Correct. Yeah. But a 50-year sentence with 25 years suspended for probation is not the same as a 50-year executed sentence. And also the fact that McMullin could be- But the probation, all the probation stuff would be wiped out, right? If, God forbid, you have a very serious crime committed today and he's reincarcerated tomorrow, you'd say we're forgetting everything about probation, everything about the suspended sentence. You're back in and it's 50 minus whatever time you've done. Which is actually the point, if you could address it too, of that first hypothetical that the reply brief begins with. Right. Just walking into a bar. Right. That hypothetical shows that McMullin is still in custody. There's no question about that. He is in custody. The fact that his liberty is restrained- But he has to serve out the remainder, as Judge Stutter is saying, of the 50-year sentence. There's no resentencing down to the 10 or 11 years or whatever it was at the time of the suspension. He's still under a 50-year sentence. He's just serving it out on probation. Potentially. And I agree that he is in custody. And whether he violates his probation is up to him. McMullin can't ask this court to protect him from himself. That conduct is up to him. He's no longer serving a sentence for the same judgment that he challenges. And that's significant based on the reasoning in Magwood v. Patterson. Now the defendant in Shorter made the same type of argument. That if I violate my supervised release, I could be sent back to prison. And this court said that doesn't matter because that's too speculative. And that depends on Shorter's conduct. The same reasoning applies here. Mr. Drumm, can I get the benefit of your reaction to Mr. Morell's argument? I'm going to add just a shade to it. He emphasized, and I think appropriately so for his client, the 50-year statutory maximum. And at sentencing, one of the points that was made, you know from the record, was that the state took a very hard line position in its commentary at sentencing saying that he's been a menace to the community since the age of 10 years old. And then it makes this statement. He has no social redeeming factors. Basically, his life has no redeeming value at that point given his offense conduct and his history. Isn't it important in a context like that for a lawyer to be able to push back with some particularity to say, hold on, hold on, hold on. His life is what it is because of the hand he was dealt at birth. And his upbringing was abysmal and entirely out of his control. Put differently, the only way to push back on what the state is arguing for, the statutory maximum, is to put yourself in an informed position of having particulars to push back with. That's what troubles me here. That when you're limited to the PSR, you're limited to a level of generality that doesn't capture his upbringing. And capturing his upbringing is what will allow you as defense counsel, so the argument goes, to push back on the state's very firm position. I just want to be clear that you're asking specifically about the merits now. Yeah, absolutely. Yeah, yeah, yeah. McMullen's counsel knew about his bad childhood. He interviewed McMullen's grandmother more than once. He discussed the childhood with her. And McMullen's grandmother's affidavit provides the most detailed account of McMullen's childhood. So counsel was well aware of that as he testified at the post-conviction hearing. But counsel also knew from his extensive experience that that kind of evidence wasn't going to stack up in mitigation in this case based on McMullen's criminal history. But what about the professional psychologist, for example, who seems to have been totally overlooked by the state courts? That's not just cumulative evidence to what someone's grandmother says. I agree. I agree. That's different. The mental health evidence is different than the bad childhood evidence. And quite important. But at the time, McMullen's counsel didn't have any reason to think that he needed to look into McMullen's case. He had every reason. Both of the courts said that Judge Sweeney says red flags everywhere. There were certainly reasons to delve into the specifics, as Judge Scudder says. In McMullen's pre-sentence report, he described his mental health as okay. Well, but he was, of course, wrong because he had been diagnosed with quite a few problems. Anxiety, dysthemic disorder, post-traumatic disorder, panic, antisocial. That's not an okay mental health. And since when are people good at self-diagnosing their mental health? Well, McMullen was surprised, I think, by the mental health diagnosis that he received on a post-conviction review. Because people can't self-diagnose. But the significant point to look at here, what's important about the mental illness is that there was no nexus between his mental illness and the crimes that he committed. It wasn't contrary to clearly established federal law for the state court to require a nexus. But that's not the question. The question is what sentence needs to be imposed. Of course, he's guilty. We're not worrying about that. But his mental illness may have a lot to do with whether a 35-year sentence would be adequate, as we would say in the federal side, or it had to be 50 years, or something different. There's a lot of punishment that goes on in a 35-year sentence. And if you're imprisoning somebody who's mentally ill, whose mother had a hot iron put on her stomach, and all sorts of these gun things, the abuse, father trying to make sure the mother miscarried him while she's still pregnant with him, these are things that affect culpability. They affect some of the purposes of sentencing, not all, but some. In the post-conviction court specifically, you can see all that evidence. He didn't, though. He just said it's all the same. I agree that he didn't detail all that in his order. Right, which is troublesome. But that doesn't mean that he didn't consider it. How do we know? Well, he also didn't reference the parts of McMullen's evidence that were contradictory. For example, some stories were more favorable to McMullen than others were. People disagreed on those stories. He didn't reference everything that was in McMullen's evidence, but he certainly considered it. There's no evidence where he says, I did not consider this mitigation evidence. I didn't look at this. I didn't look at this mental health. He considered it. He said specifically, the reason I sentenced McMullen to 50 years is because of his criminal history, because he has not been rehabilitated even though he's had many opportunities. So he gets, just to be clear, he gets a 50-year sentence for 18 grams of drugs? Eighteen grams of cocaine and a kilogram of marijuana. And then some marijuana. I have to tell you, you know, I drive into Indiana a lot, and you pass all these giant billboards encouraging people to smoke marijuana and go to this store or go to that store. It's a high sentence for what he did. Just to be clear, marijuana is still illegal in Indiana, Your Honor. I know it. These are billboards urging people to take a U-turn and go back into Illinois. But it was reasonable for the state court to find no prejudice here because what the post-conviction court did was a state law determination. Just like this court's decisions in Miller, Kimbrough, and Harper, when you have the sentencer saying, my sentence would not have changed, that's a state law determination that this court cannot second-guess. Go ahead. I was just going to say the Supreme Court has actually expressly told us not to make decisions on such a personalized level. This is a higher-level inquiry about whether what the state court did was objectively unreasonable. So you can't just say, oh, we know and trust Judge Spitzer. You have to look at the record. It was at least reasonable for the Indiana Court of Appeals to believe Judge Spitzer, to believe that the sentence wouldn't have changed. It's also significant that the Court of Appeals reviewed McMullen's sentence on direct appeal, and they reached the same conclusion. But on direct appeal, it was worthless because it was just the PSR information. It was not this enhanced record. It wasn't useless because the pre-sentence report did contain information about McMullen's bad childhood. It wasn't as if it was completely silent about that. For example, Mr. Drum, on the 2254 issue, do you agree or disagree with Judge Sweeney on the deficient performance being reviewed de novo versus deferential? I disagree. The court would only get to de novo review of deficient performance if the state court unreasonably applied prejudice. So do you read the Indiana Court of Appeals decision differently than Judge Sweeney? I do. I think that the Indiana Court of Appeals gave the court some reasons that it could defer to based on performance. Because the performance analysis looks at counsel's overall performance, and the state court discussed that. They talked about the fact that McMullen's counsel did some investigation, that he made an argument for McMullen. He actually argued that his bad childhood is the conduct that explains the behavior, I think was what he said. So he made an effort. He convinced the trial court to—or he convinced the state, rather, to vacate the habitual offender allegation, which could have potentially added 30 more years to McMullen's sentence. Yes? Just so we get a flavor of Indiana's sentencing law here, the timeline might inform that because arrest is in 09. In 2017, they come back and ask for a modification. The same judge, Judge Spitzer, is throughout. He says, well, these are the kind of conditions I might consider. Then they bring it back again in 20. He grants it in 21. So Mr. McMullen has about 12 years in, 11, 12 years in. If the whole idea was a shock probation-type sentence, under Indiana Statute 35-38-1-17, the sequence of events here would kind of track what a shock probation sentence is. Is that correct? Yes, exactly. Do we know if Judge Spitzer ever used the phrase shock probation? No, and that's a phrase that the Indiana courts no longer use. They used to call it shock probation under a different version of the same statute. They don't call it that anymore. That preceded 14? Yes. Okay. Yes. But it's the same concept. Okay. Mr. Drum, in the Indiana Court of Appeals, the opinion on post-conviction review, there's reliance on McCarty v. State. You know what I'm talking about? I do. I remember that. Okay. So in a citation to McCarty with a parenthetical in there, McCarty's a case where there's a sex offender that is convicted, and I think relief is ultimately granted for failure to pursue mitigation evidence. Okay. My question is, when I read McCarty, I kind of have a double take. I read McCarty, I look at the Indiana Court of Appeals opinion, and I think, well, hold on, if there's relief in McCarty, why ain't there relief here? I mean, the distinction can't be, well, that's one kind of crime and this is a different kind of crime. How do you align those two cases side by side? I don't specifically remember the defendant's criminal history in McCarty. I know I read that when I was preparing, but I don't remember the specific details, but I think that's what distinguishes this case from that case, is that we know that the trial court sentenced McMullen to 50 years because of his criminal history. I think that's the distinction. Yeah, I mean, there's no question there's some factual distinctions. I mean, the one thing is in, well, okay, fair enough. Thank you. I should end just briefly by saying that McMullen has already received the relief that he asked for. He asked to present his mitigation evidence to the sentencing judge and be resentenced. He presented his mitigation evidence to the sentencing judge. Do we know that, though, with this mysterious absence of the transcript? Is there any way the state can get that transcript into the record? Well, it's not part of the record. I could obtain the transcript, true. I mean, it's a public document. It's not actually a document that's available yet. We'd have to order it from the trial court reporter. Someone would have to pay for it. That's how it works. So it's different from federal court where every time there's a hearing, there's a transcript that becomes available. You have to specifically request one. So, I mean, we could do that. But the point I was making briefly about him presenting this evidence to the conviction hearing, then there was a modification hearing where he could have presented it again or referenced it. I don't know. But it was the same judge. We know nothing about it. I mean, our hands are tied. It's disturbing. And then he received relief. Well, why don't, if the, we don't want to have the parties have to jointly bear the costs because counsel's pro bono. Would it be the state with the state of the ability to order that transcript and make it part of the record? Yeah, we could do that. If you could do that. And I think it would help us on that question of whether or not it's more of a retrospective or prospective view. And specifically whether a lot of the sentencing evidence was. Sure. I can submit that, but I think it was more of a retrospective view based on the court's order, which you have on your docket. Correct. I can certainly submit the transcript. Thank you. Thank you. We'll move back to Mr. Morrell for rebuttal. Thank you, your honor. I'd like to start back on the mootness issue. Now the case is brought up by respondents council. Magwood is shorter and Spencer. Those are all between undiscussed in pages 10 through 12 of our reply brief, but just to give some brief distinguishing factors to them. Now in Spencer, which you asked about judge wood, the difference in that case is that the petitioner argued that the case wasn't moot because that sentence curve, that conviction could hypothetically be used against him to increase his sentence in some other hypothetical criminal conviction that hadn't happened yet. That's obviously much more attenuated than what we have here in Magwood. The death sentence was fully vacated by a federal court. Then the trial, the state trial court held a new full sentencing hearing imposed death sentence. Again, there's a vacation there that distinguishes this, that case from this case. It's all about second or successive questions too. That's right, your honor. Okay. So that that's quite different. And in shorter, that was a compassionate release case where he wanted to release from prison to be able to serve out the rest of the sentence at home. And he got exactly that. So those are the differences between those cases here. Now, if I could move for just a minute to a deficient performance, first of all, as far as the standard of review goes, this is DeNova. The court did not find that counsel's performance was competent or was not deficient. When you say the court, which court are you referencing? That's the Indiana court of appeals, your honor. The Indiana court of appeals made one comment about noting that Lewis did mention some stuff at the hearing and then made no decision and moved straight to prejudice. And as discussed in our brief, many other things about that opinion make clear that the court was only addressing one prong. It said we only have to do one prong here. It resolved several other claims and only one prong. It noted later on in the opinion that we're only resolving some claims on this prong, some claims, another prong. That's how it works. And it makes sense because the court and strict from the Supreme court said that federal, that federal and state courts should do that as a matter of judicial expediency. So that's what happened. And, but even if. And for deference did apply, this case is so close to Wiggins that that would be an, an unreasonable application of federal law, even if that did apply. Of course it doesn't. Now, and the thing to note about Wiggins is that case is very, very similar to this one. And in that case, the petitioners council actually did more bad, the PSR, and they also got social services records indicating more things about Wiggins troubled childhood. And the Supreme court still found even over at the deference that that was an unreasonable application of federal law for the Maryland court of appeals to reject the claim and find no deficient performance because that was the only investigation they did. And all of this other evidence, like in this case was beyond its review. Now, your honors, for the reasons discussed in our brief and today, we ask that you reverse the district court's judgment and remand with instructions to grant the conditional writ. Thank you. Thank you, Mr. Morrell, you and your firm took this matter pro bono public. Oh, we have the great thanks of the court. Thank you. And to your firm, as well as thanks to Mr. Drum. And thank you for ordering the transcript. The case will be taken under advisement.